# MEECH

## *v.*

# THE SMITHSONIAN INSTITUTION.

EQUITY; RESULTING TRUSTS; FORFEITURE OF LEGACY.

1. Where a deed of land is taken in the name of a person, such as a wife or child, for whom the person who pays the purchase money is under a legal or moral obligation to provide, no presumption of a resulting trust arises, and it is incumbent upon the person who claims the existence of such a trust to show it by clear, positive and unequivocal proof.

2. When in a suit by a scientific institution, the residuary legatee named in a will, to establish a resulting trust in the testator of property, the legal title to which at his death was in the heirs of his wife who predeceased him, but which it was sought by him to devise, the testimony showed that the property was bought with testator's earnings during the lifetime of himself and his wife; that the property was sometimes mentioned by her as their joint property; that the testator once or oftener executed a lease of it in his own name and collected the rents; that the title was placed in the wife in order to give her control of the property, but with the understanding between them that she should hold it during their lifetime and make a will transferring it to the complainant at her death, it was *held* reversing a decree of the lower court that no resulting trust was shown, the retention of the control of the property by the wife being inconsistent with any theory of the existence of such a trust.

3. The failure of an express trust or of a specific agreement in regard to real estate to prove effective does not authorize parties by that failure alone to fall back upon a resulting trust when none was intended in the transaction.

4. Where a legacy is left to legatees upon condition that they acquiesce in the will and provision is made in the will that the share or shares of any disputing legatee shall go to the residuary legatee, a contention by the legatees in a subsequent litigation between them and the residuary legatee that certain real estate mentioned in the will was theirs by inheritance from the testator's widow and did not pass by the will, will not result in a forfeiture by them of their legacy.

No. 558. Submitted April 22, 1896. Decided May 12, 1896.

HEARING on an appeal by the defendants from a decree in a suit to establish a resulting trust in certain real estate. *Reversed.*

The COURT, in its opinion, stated the case as follows :

This is a suit in equity filed by the appellee, the Smithsonian Institution, to establish its title to certain real estate in the city of Washington, against the claims of the appellants, Levi W. Meech and others.

One Lydia Tyler Avery, wife of Robert Stanton Avery, died in the city of Washington, where both had resided for many years, on November 18, 1890, leaving her husband surviving her. She died intestate and possessed of a fee simple estate in a part of lot No. 2, Square 787, in the city of Washington, to which the appellants, who are her nearest relatives, now claim to be entitled as her heirs at law.

Robert Stanton Avery, the husband, who was about twenty years older than his wife, survived her nearly four years, dying on September 12, 1894, in the eighty-seventh year of his age. He left a will executed on July 22, 1893, whereby, among other bequests, he left $1,000 to be equally divided between the sister and brothers of his late wife, the appellants in this case, upon the condition that the legatees should " acquiesce in this will," and providing that the share or shares of any disputing this will should go to the residuary legatee thereinafter named. The residuary legatee and devisee purported to be the " Smithsonian Institution," the appellee in this case ; and the clause of the will purporting to devise and bequeath the residue of the estate was as follows :

" All the rest and residue of my estate, of whatsoever nature, real, personal or mixed, and wheresoever situate, I hereby give, devise and bequeath unto the Smithsonian Institution, a body corporate by virtue of the laws of the United States, of which institution Samuel P. Langley is now secretary, having its legal residence in the District of Columbia, unto it and its successors forever."

Thereafter in the will the testator proceeded to give as his reason for so disposing of his property his great love for science and his desire for the diffusion of knowledge, for which he had long been toiling in humble capacities, in which he stated that he had acquired most of his property ; and he expressed his desire that the fund derived from the residuary bequest should be known as " The Avery Fund," or " The fund contributed by Robert S. Avery and his wife, Lydia T. Avery, for the extension of the sciences." He indicated also the special mode in which he preferred that the fund should be used. He then proceeded to make the following statement :

" The property known as part of lot 2 (two), in Square 787, in the city of Washington, D. C., being premises No. 326 A street S. E., is my property, although the title stands in my wife's name. I include it in the residuary bequest to the Smithsonian Institution."

It is over the ownership of this lot of ground so described that the present controversy has arisen, the appellants, as already stated, claiming to be entitled to the property as the heirs at law of Lydia T. Avery, the wife, who died seized and possessed of it ; and the appellee claiming it as the residuary devisee under the will of the husband, Robert S. Avery, by virtue of a resulting trust.

Robert S. Avery was for many years in the service of the United States as an employee of the Coast Survey Bureau. He was frugal, lived a retired life, and devoted himself to scientific research. He and his wife had no children ; and it would seem to have been for several years a favorite scheme with him, and the purpose of both, that their property, after their death, and the death of the survivor of them, should be devoted to the promotion and diffusion of scientific knowledge. It is claimed that there was an understanding between the two that for this purpose the property should be left to the Smithsonian Institution by wills to be executed by each of them, reserving a life estate to the survivor. But, as already stated, Mrs. Avery died intestate,

and without making any testamentary or other disposition whatever of her property, which is that in controversy here. Mr. Avery, more than two years after the death of his wife, made the will that has been mentioned.

In the year 1882, during the lifetime of his wife, and when it was the confident expectation of both that, in consequence of his greater age and infirmity, she would survive him, he had made another will, by which he had devised and bequeathed all his estate to her for life, and, upon her death, to the Smithsonian Institution, for the same cherished purposes as in his later will.   There was no mention in this will of any specific property ; nor had the property in controversy here been at that time purchased.   That purchase was made in 1885, and the deed of conveyance of it by the vendor to Mrs. Avery was the ordinary form of deed of conveyance in fee simple.

About two years after the death of Mrs. Avery, in November, 1892, Mr. Avery made an affidavit, which has been incorporated into the record before us, and by which he sought to affect the title to the property in controversy.   In this affidavit he states that " at the time of the purchase he was not in good health, and his wife, Lydia Tyler Avery, being of the opinion that she would outlive him, he permitted said property to be transferred to her upon the then expressed condition that she was to make a will in his favor in the event of his surviving her, as he had already done in her favor in the event of her surviving him, the mutual understanding being that the combined property was to be left to the survivor during life and then to be disposed of by will for scientific or educational purposes, as had been talked over and agreed upon by them in conversations between them, this disposition of all their estate being so made in consequence of their married life not having been blessed with children."   And he went on further to state " that the entire consideration money paid over for said property was saved exclusively from his earnings ; that his wife, Lydia Tyler Avery, departed this life on the eighteenth day of November, A. D.

1890, without issue and without a will, although he, at her request, during her last illness, had prepared one embodying her wishes as herein expressed, but at the time of presenting it to her for execution she was too far gone to execute the same, and never thereafter rallied sufficiently to perform any such act."

Four or five other persons who also at the same time or thereabouts induced to make affidavits in support of the statements contained in Mr. Avery's affidavit; and one of these is given in the record.

Shortly afterwards, under the date of December 20, 1892, Mr. Avery executed a codicil to his will of September 30, 1882, in which he repeated the substance of his affidavit; and under date of May 19, 1893, he executed another codicil to it not important to be here recited. Subsequently, this will and the codicils to it were superseded by the will of July 22, 1893, which is the will that has been admitted to probate.

After the death of Mr. Avery, the appellee, the Smithsonian Institution, took possession of the property in controversy, and still continues in the possession of it. • On May 15, 1895, it caused a paper to be recorded among the land records of the District of Columbia, purporting to be a declaration of ownership of the property, and to which was annexed the affidavit of Mr. Avery heretofore referred to, which was also transcribed among the records. On May 23, 1895, the appellants, claiming the property as heirs-at-law of Mrs. Avery, made formal demand upon the appellee for the possession of it, which demand was refused. Thereupon, on June 4, 1895, the Smithsonian Institution, as complainant, instituted in the Supreme Court of the District of Columbia the present proceedings in equity, in which it stated most of the substantial facts here enumerated, together with some other circumstances claimed to show the ownership of the property in controversy by Robert S. Avery, and by which it was sought, 1st. To have the equitable title to that property decreed to be in the com-

plainant ; 2d. To have the defendants enjoined from claiming title thereto, and to require them to execute deeds of conveyance thereof to the complainant ; 3d. To require the executrix of the will of Avery to treat the legacy of $1,000 to the appellants as forfeited to the appellee on the ground that they were disputing the testator's will ; and, 4th. To have general relief.

Testimony was taken on behalf of the complainant, much of it under objection, which seems to a great extent to have been very properly interposed. The strongest part of this testimony for the complainant is that of one Leland P. Shidy, an associate of Avery in the Coast Survey office, and an intimate friend and frequent guest of Mr. and Mrs. Avery. He makes this statement :

" I was at their house at the time when they began talking about making the purchase, and they discussed it, in the first place, as to the advisability of getting the property at all ; and after that was decided, they discussed as to how the deed had better be made out, and Mrs. Avery thought it would be best to put the deed in her name, although her husband's money was paying for it exclusively, and he thought best to do so, and had the deed made out in her name.

" She wanted it in her name, in the first place, because she wanted to have the control of that property, as it was immediately contiguous to her own home, and then she thought she would be pretty certain to outlive her husband, and that it would be better in case of his death to have the title in her name than in his name.

" It was agreed that she should have the property during her lifetime, and that she should make a will transferring it at her death to the Smithsonian Institution."

There was no writing whatever of any kind produced signed by Mrs. Avery that had reference to the property, except a letter or memorandum, apparently addressed by her to her attorney, or the attorney who had prepared the deed to her, in which she uses the expressions "*we*" and

" us " in connection with the papers and some small payments that remained to be adjusted. The paper proves nothing, certainly nothing in favor of the complainant.

The defendants took no testimony, beyond offering in evidence two bank accounts of Mrs. Avery, both with the same banking institution in Norwich, Connecticut, from which place she seems to have come, and each of them, it would seem, a distinct account—one showing a balance of $696 to her credit on July 1, 1861, and the other showing a balance of $997.39 to her credit on July 1, 1890.

Upon the hearing, the Supreme Court of the District of Columbia rendered a decree in favor of the complainant, the Smithsonian Institution, to the full extent claimed; and the learned justice who sat in the case filed a very able and elaborate opinion, which is found in the transcript before us, in support of the conclusion reached by him. From that decree the defendants have prosecuted the present appeal.

*Mr. Franklin H. Mackey* for the appellants :

1. The allegation of the bill itself negatives the existence of a resulting trust. It sets up clearly and specifically *an express agreement* between the husband and wife that the wife should take the property for life, and in the event of surviving him that she would devise it to the Smithsonian Institute, but if she should die before him she would devise it to him. This is not a resulting trust, but an *executory agreement*, which in the case of real estate must be established by evidence in writing " signed by the party to be charged," and even then under the circumstances of this case could not be enforced, for the appellee is a mere volunteer, and it is well settled that courts of equity will not enforce a contract in behalf of one from whom no consideration proceeded. Fry Spec. Perf., sec. 92.

This court has in three well-considered cases of comparitively recent date expressed its views upon the doctrine of

resulting trusts.    *Cohen* v. *Cohen*, 1 App. D. C. 240 ; *Cook-sey* v. *Bryan*, 2 App. D. C. 557 ; *McCormick* v. *Hamersley*, 4 App. D. C. 320; see also *Jackson* v. *Jackson*, 91 U. S. 125.

A resulting trust in real estate *ex vi termini* is a trust which results *back* to the creator of the trust, and is for his benefit *solely* and not for the benefit of some third party. It is created not by the *ageeement* of the parties (for then it is an *express* trust), but arises and grows out of the existence of certain facts entirely independent of agreement. Where the consideration or purchase price for the property is furnished by one person and the title is taken by another, there being an entire absence of any *agreement* with respect to the manner in which the title is to be held (for if there be an agreement as to the holding of the title, then the transaction is *controlled* by that agreement), then the law steps in and controls it and declares that a trust arises for the benefit of the person from whom the consideration proceeded, and that the person in whom the legal title is vested shall hold it in trust for the former.    The only way in which a resulting trust can operate is for the sole benefit of the party from whom the consideration proceeded. It cannot operate so that any other or third person shall become the beneficiary or *cestui que trust.*    1 Perry on Trusts, secs. 133, 134 ; *Jackson* v. *Ringland*, 4 Watts & Sargt. 149 ; *Thompson* v. *Thompson*, 180 Ohio St. 73 ; *Bottsford* v. *Burr*, 2 Johns. Ch. 408 ; *Lothrop* v. *Hoyt*, 7 Barb. 60 ; *Dorsey* v. *Reading*, 8 Sargt. & R. 484.    For though a trust may under exceptional circumstances be declared for the benefit of A where B paid the purchase money and C took the legal title, yet such a trust must necessarily be an express trust growing out of an agreement (to be evidenced in the case of real estate by a writing) between the parties, for in the absence of an agreement the *law* makes B the *cestui que trust*, or beneficiary.    Moreover, B must become the beneficiary *instantly* upon the consummation of the transaction or not at all, viz., upon the

payment of the money by him and the conveyance of the legal title to C. 1 Perry, Trusts, sec. 133. In a resulting trust there are no qualifications of the estate to be held by the parties. A, who pays the purchase money, takes the same estate in equity that B, the legal grantee, takes at law. The law does not declare that if A pays the purchase money and the legal title is taken by B the latter shall hold the estate *for his life* and then on his death A shall take it. A must take the beneficial use *co instante* the legal title vests in B. That is the *only* trust that the law creates by reason of the facts. If any other conditions are attached to the trust it must be by the agreement of the parties; whereupon *ipso facto* it is not a resulting trust, but an executory contract.

It is clearly evident, therefore, that the trust which, it is contended in the case at bar, exists for the benefit of the Smithsonian Institution cannot be established except by evidence in writing signed by Mrs. Avery, and it is not contended that there is any such evidence in this case. Bisp. Equity, 97; *Groff* v. *Rohrer*, 35 Md.; Reed on Stat. of Fr., sec. 974 *et seq.; Cohen* v. *Cohen*, 1 App. D. C. 240; *Cooksey* v. *Bryan*, 2 App. D. C. 557; *Levis* v. *Kengla*, *ante*, p. 230; *Slocum* v. *Marshall*, 2 Wash. C. C. 398; *Thomas* v. *Staniford*, 49 Md. 181; 1 Beach Eq. Jur., sec. 224; *Foote* v. *Bryant*, 47 N. Y. 544.

Nor will the payment of taxes and the making of improvements by the husband rebut the presumption that the conveyance was a gift to the wife. *Maxwell* v. *Maxwell*, 109 Ill. 588. Mere declarations of the trustee [the wife] are not sufficient to establish a resulting trust. Such evidence is unsatisfactory from the danger of mistake and may easily be misinterpreted unless corroborated by circumstances. Reed St. of Fr. sec. 976. Nor can a resulting trust arise where the *use* is expressly limited to the grantee in a deed. Am. Encyl. Law, vol. 10, p. 14; 1 Perry on Trusts, sec. 162; *Donley* v. *Bradley*, 119 Ill. 412; *Alexander* v. *Warrance*, 17 Mo. 228; *Dean* v. *Dean*, 6 Conn. 285.

It is also a serious question whether when a husband pur-
chases property in the name of his wife a resulting trust
arises.    Washburn Real Prop., vol. 2, p. 475 ; Story Eq.
Jur., sec. 1204; *Jackson* v. *Jackson*, 91 U. S. 122.    But
while parol proof has been held admissible to rebut the
strong presumption of an advancement in cases where the
deed is an ordinary feoffment, yet we insist that in case of
a purchase by a husband in the name of the wife, where the
deed expressly and with the knowledge of the husband
limits the use " unto and to the only use and benefit " of
the wife, the evidence necessary to overcome such pre-
sumption, even if it can be by parol proof, must be very
strong indeed.    *Scott* v. *Harris*, 113 Ill. 448 ; *Price* v. *Keen*,
112 Mo. 412–419 ; *Woodford* v. *Stephens*, 51 Mo. 443 ;
*Lehman* v. *Lewis*, 62 Ala. 129 ; *Whitman* v. *Learned*, 70
Me. 276.    *A fortiori* would the burden be a heavy one
when the conveyance is to the wife and the deed expresses
it to be " to her only use and benefit."

2. There is no room for the application of the doctrine of
election to this case as it stands.    The contention of the
appellants is that they have never had an election put to
them to take the legacy or the A street property, and they
cannot, without a surrender by the appellee of its contention
in regard to its ownership, have such an election put to
them.

" The intention to raise an election must be clear and
manifest from the will itself.    The intention must be col-
lected from the face of the instrument, and without a clear
and express manifestation it cannot be presumed to extend
to property which did not pass under the will." *Jones* v.
*Jones*, 8 Gill, 198 ; *In re Gilmore*, 81 Cal. 242.

If there exists *probabilis causa litigandi* the non-observ-
ance of the condition not to dispute a will, will not cause a
forfeiture.    29 Am. Encyl. Law, 484; note, Jarman on
Wills.

*Mr. Frank W. Hackett* for appellee :

I. (1). The presumption that Mr. Avery intended a gift to his wife may be rebutted by parol proof. *Livingston* v. *Livingston*, 2 Johns. Ch. 537 ; *Sherman* v. *Sherman*, 20 D. C. 330. Whether a purchase in the name of a wife is a settlement or not is a question of pure intention, though presumed in the first instance to be a provision and settlement ; but any antecedent or contemporaneous acts or facts may be received either to rebut or support the presumption. *Persons* v. *Persons*, 25 N. J. Eq. 250, and cases cited.

The proof satisfies the requirements, as recently announced in a case of a married couple, by the Supreme Court of Rhode Island : that the husband paid the purchase money, and that he did not intend the conveyance to his wife to operate by way of advancement. *Hudson* v. *White*, 17 R. I. 522.

(2). Our bill does not seek to enforce an express trust. It asks to have a trust sustained that resulted from Mr. Avery's paying the money, with the intention both of himself and wife that the real ownership should remain in him for the purpose of giving it to the Smithsonian in case he outlived her.

Mrs. Avery's ownership was to be nothing more than nominal. Each was to make a will. The disposing by will was a part of the original agreement ; it qualified and restricted the character of the holding. It was consistent with the fact that the beneficial use remained in the husband, for his will already existed, thus bringing the case within the principle recognized in *Sherman* v. *Sherman* (20 D. C. 330), where the agreement entered into between husband and wife was that he should buy real estate, take the title in her name, and that she should execute a will devising it to him after her death.

The fact that Mrs. Avery agreed with her husband that the property should ultimately go to the Smithsonian Institution is relied on, not to define the nature of the trust, but

to rebut the presumption of law that she was the absolute owner. The testimony proves beyond doubt that the parties meant that the title should be put in Mrs. Avery simply for convenience.

(3). That the parties entered into a verbal agreement, which was void, does not prevent our obtaining the relief prayed for. A bill may set out facts which constitute a verbal agreement in relation to land, tending to create a trust contrary to the seventh section of the statute of frauds, and though the evidence does show an agreement, the Court will look to see if the consideration be paid and declare it a resulting trust. *Keller* v. *Kunkel*, 46 Md. 565 ; *Converse* v. *Noyes*, 66 N. H. 570.

Equity looks to see what as between husband and wife was the intention of the parties ; and if satisfied that the husband *did not intend* an advancement, it will carry out his purpose of retaining in himself a beneficial interest. The implied trust that left Mr. Avery with the power to devise this house and lot is not negatived by proof of a different intent. The *intention*, as between husband and wife, will be carried out by equity, even where at the time no money is paid by the former, the understanding of the parties is plainly shown to the court. *Gray* v. *Jordan*, 87 Me. 140.

(4). Our proof conforms to the rule that requires clear, strong, unequivocal and unmistakable testimony to establish a resulting trust. *Hudson* v. *White*, 17 R. I. 529: Declarations of Mr. Avery at the time the deed was made, or shortly after, are admissible. Such intent having been proved, it is further allowable to introduce Mr. Avery's affidavit to corroborate that intention. It does not seek to prove the facts therein stated. It is a verbal act tending to prove that Mr. Avery's intention at the time was what other testimony shows it to have been.

That Mr. Avery made a lease of the property, and collected the rent, as if it were his, tends to corroborate the testimony of Mr. Shidy, that taking title in her name was not intended to convey to her the absolute estate. The parties did not

intend that the beneficial interest should pass with the title. This interest, consisting of rents, was enjoyed by Mr. Avery, the two living together, with little or no outlay except for board. The case shows no assumption of ownership by Mrs. Avery such as to justify the conclusion that it ever was their intention that the real ownership should pass out of Mr. Avery. He had made a will giving to his wife a life interest in all his property, so that she was secure in the enjoyment of this particular piece of property, in accordance with the agreement entered into at the time the deed was taken.

Equity, when it perceives clearly an intention existing at the time and lived up to continuously afterward, will carry into effect that intention, in a case where purchase money is paid by one and title taken in the name of another. The fact that the transaction is between husband and wife serves only to make the court more scrupulous to sift the testimony and to proceed only upon very clear and convincing proof. That proof we have furnished. It stands uncontradicted.

II. The testimony of Mr. Cox as to statements made to him by both Mr. and Mrs. Avery in the presence of each other is admissible. There was no occasion for confidences as against each other, and both were inspired with the same purpose. The rule of privileged communication does not apply to the case of husband and wife together consulting freely and harmoniously with an attorney for the purpose of drawing up their wills. *Gulick* v. *Gulick*, 38 N. J. Equity, 402; *Russell* v. *Jackson*, 9 Hare, 392; Wharton's Law of Evidence, vol. 1, section 591.

Where both parties are present at a time when communication is made by one of them to his attorney or counsel there is nothing confidential in the communication. *Whitney* v. *Barney*, 30 N. Y. 330; *House* v. *House*, 61 Mich. 69; *Cady* v. *Walker*, 62 Mich. 158; *In re Bauer*, 79 Cal. 312.

III. The appellants forfeited their right to the $1,000 legacy

by claiming the A street lot and putting the Smithsonian Institution to the expense of this suit. But the doctrine of election (as conceived by the court below) has no application here. "There must appear upon the face of the will itself a clear, unmistakable intention on the part of the testator to dispose of property which is in fact not his own." Pomeroy, sec. 472. There is no occasion to resort to the doctrine of an implied choice. The gift is made upon the express condition that the legatee shall acquiesce in the will, which means, of course, in every part of it. The counsel for appellants says : "It seems to be the result of the authorities that if there exist *probabilis causa litigandi,* the non-observance of the condition not to dispute a will will not cause a forfeiture." He cites 29 Am. Encyl. Law, 484, note ; Jarman on Wills ; but he omits to add the further language of Mr. Jarman, that "if the legacy be given over upon breach of condition, a forfeiture is declared." Wills, 5th Am. ed., vol. 2, *p. 59. The language of counsel is taken from the opinion of the court in *Chew's Appeal,* 45 Pa. St., 328. It is not only a *semble,* but it has not even the force of argument, since it appears that the court found that none of the acts of the appellee were within the prohibition of the will. The views of the learned judge are drawn from the text of Roper on Legacies, vol. 1, 795.

How far the early English cases will be followed in this country, where there is no gift over, it is perhaps hardly worth while to enquire. In the case at bar the condition is not that of "breaking a will," but of not acquiescing in its provisions. His wife's relatives had no claim upon Mr. Avery's bounty. Desiring to equalize substantially his gifts to the family of his wife and those of his own relatives, he made this bequest. To guard against the danger of diminishing the Avery fund by bringing his will into litigation, he expressly enjoins that his bequests are made upon the condition that the legatees acquiesce in the will. He goes further. He bequeathes the share of any disputing the will to the Smithsonian Institution. The legacy of $1,000 has

passed, under the will, to the Institution.    The relatives of
Mrs. Avery, instead of acquiescing in the disposition of the
A street lot by the testator, have compelled us to bring this
bill.    They had full notice that such a suit would have to
be instituted.    Their continued claim that the lot belonged
to them, as heirs at law of Mrs. Avery, violated the condi-
tion upon which alone the testator intended his gift to take
effect.

The learned judge below treated the legacy of $1,000 as
a subject of forfeiture, and stated the conditions under which
he would decline to "enforce the forfeiture."    We are un-
able to adopt this view of the right of the Smithsonian In-
stitution to the money given them in express terms, when
the wife's relatives should refuse to acquiesce in the will.
We conceive that no question arises here of enforcing a for-
feiture.    The court was asked to direct the executrix.
This request was in the nature of seeking a construction of
the will ; or, to be more exact, it prayed that the court find
as a *fact* that the defendants had disputed the will.    The
condition which the testator attached to the bequest exe-
cutes itself.    The principle of equity not enforcing a for-
feiture does not apply to a limitation over such as this.    The
doctrine is confined to conditions arising out of agreements,
such as covenants in leases or contracts generally.

There was no room for the court below to give to the
defendants this one thousand dollars upon their "relin-
quishing their opposition."

Their refusal to conform to the suggestion of the opinion,
and their prompt appeal to this court, works the same re-
sult as if the decree had declared the $1,000 payable to the
Smithsonian Institution outright.

The decree should be affirmed, except so far as this
court shall see fit to modify it, so as to ensure our absolute
title to the $1,000 in question.

Mr. Justice MORRIS delivered the opinion of the Court:

We think that there can be no doubt whatever of the purpose of the deceased Robert S. Avery to devise to the Smithsonian Institution for the promotion of scientific education, not only such property as he may have had in his own name and under his direct control, but likewise, so far as he might control it, the property standing in his wife's name and in controversy in this suit. And we think, also, that it is highly probable that Mrs. Avery sympathized in her husband's enthusiasm for science, and had similar purposes in reference to her own property, or the property here shown to have been placed under her exclusive control. But it is very plain that, whatever may have been her purpose in that regard, she failed to carry it into effect. Whether she afterwards changed her mind, or whether she for some reason postponed the execution of her will, the fact remains that she made no testamentary disposition of this property, in accordance with what would seem to have been the wishes of her husband, and what is claimed to have been the understanding or agreement between them. It is plain that, if there was any agreement or understanding of that kind between the two, it was, as set forth in the affidavit of Avery and the testimony of Shidy, that she was to retain this property for her life; and that she was to make a will, devising it upon her death to the Smithsonian Institution for the scientific purposes specified. This is the only understanding sought to be shown to have existed between them.

Now, it requires no elaboration of argument or citation of authorities to show that this understanding or agreement, even if proved beyond any possible doubt, could not be enforced by a court of equity against the objection of the holders of a legal title and the plea of the statute of frauds, in the absence of any memorandum in writing by which it could properly be evidenced. Such an agreement would simply raise an express trust, which would be null

and void and incapable of being enforced under the statute of frauds. The trust was that Mrs. Avery should make a certain will; she has made no will of any kind; and there is no power in the courts to make a will for her.

But this is conceded by the appellee, although both the bill of complaint and the testimony are largely devoted to the establishment of this express trust. The effort is to show that, notwithstanding this proof of an express trust, the money for the purchase of the property in question was paid exclusively by Mr. Avery from his own earnings, and that therefore there was a resulting trust in his favor.

A resulting trust arises by operation of law, when one person buys an estate and pays the purchase money therefor, but takes the deed in the name of another person. The person, in whose name the deed is taken, becomes a trustee for the person who has paid the money; and the trust so created is exempted from the operation of the statute of frauds by the express provision of that statute itself. But it is well-settled law that this does not apply to the case where the deed is taken in the name of a person, such as a wife or a child, for whom the person who pays the purchase money is under any obligation, legal or moral, to provide. In this case no presumption of a resulting trust arises; and it is incumbent on the person who claims the existence of such a trust to show it by clear, positive and unequivocal proof.

This doctrine, which may be regarded as elementary law, we do not understand to be controverted in this case; and accordingly the appellee, for whose benefit the resulting trust is now claimed, has undertaken the burden of showing its existence, as it was bound to do, by positive proof to that effect. But we fail to be convinced that it has succeeded in the effort.

The proof in such case, it has been said, must be clear, positive and unequivocal. It must leave nothing to doubtful inference, or to deductions from loose and casual conversations or ambiguous circumstances. The right to prop-

erty is too sacred to be made dependent upon the doubtful recollection of casual conversations sought to be reproduced long after their occurrence and when the parties to them have passed away, and explanation by those most competent to explain is no longer possible.   This is the rule laid down by all the authorities ; and we are compelled to hold that, tested by this rule, the testimony of the appellee, on whom the burden of proof was imposed, wholly fails in our opinion to establish a case of resulting trust.

The testimony of all the witnesses for the appellee, except one, simply tends to prove that it was the money of Robert S. Avery, and not that of his wife, that was paid for the property in question.   But we assume this to have been the fact, although we do not by any means regard it as satisfactorily proved.   As already stated, conclusive proof of it would not establish a resulting trust as between husband and wife.   There must be something further than that, some satisfactorily evidence to rebut the presumption of a gift or advancement by the husband to the wife.   The only other evidence in that regard, excepting that of the one witness to whom we have referred, is to the effect that the property was sometimes mentioned by Mrs. Avery as their joint property, and that Mr. Avery once or oftener executed a lease of the property in his own name and collected the rents.   But it is not unusual for the merest agents to rent property in their names which has been placed in their hands for management, and to collect the rents ; and most assuredly no just inference of joint ownership, certainly no reasonable inference of real ownership in her husband antagonistic to her own can be drawn from occasional expressions used by Mrs. Avery, such as " *we*," " *us*," " *our*," " *our* property."   For such expressions there is a greatly more reasonable and more obvious explanation.   On the other hand, the testimony of several of these witnesses goes to show that Mrs. Avery claimed the property as her own, and that she desired to have the title in herself in order that

she might control it.    And such control, of course, would be inconsistent with any theory of a resulting trust in her husband.

Only one witness, Mr. Leland P. Shidy—whose opportunities for knowledge, it is true, seem to have been exceedingly favorable—testifies to any agreement or understanding between the husband and wife with regard to this property, or to any circumstances that might be supposed to tend to rebut the presumption of a gift or advancement by the husband to the wife.    For, of course, we cannot regard as testimony the affidavit of Robert S. Avery made after the death of his wife, and to which we have already referred as stating most strongly the contention on which the appellee relies.    But the testimony of Shidy, even if we assume that his testimony alone could overcome the sworn answer of the defendants in the case, wholly fails to establish a case of resulting trust.    The portion of this testimony which is strongest for the appellee has already been cited ; and it simply shows that Mrs. Avery took the title to the property because she wished to control it, and with the understanding that she should hold the property during her lifetime, and make a will transferring it at her death to the Smithsonian Institution.

This testimony is corroborated by that of Mr. John F. Cox, if his testimony is admissible, a point which we need not decide here.    He seems to have been called in professionally by Mr. Avery to make his will for him, and also a will for Mrs. Avery.    He states that Mrs. Avery " said that her husband had permitted her to take the property in her own name, and that she wished to make a will that would follow out his intentions as to his own property." And he adds that the reason why he did not draw a will for her was that she would postpone it until after Mr. Avery's will ; that she could make her's afterwards ; and that she knew that he was going to die before she would, since he was so very ill.

Now, all this shows very clearly that Mrs. Avery re-

garded the property as her own, to be controlled exclusively by herself, but intending to devise it at her death to the Smithsonian Institution.     Not even a life estate was contemplated to be reserved to her husband in the event of his survival of her, for that event seems to have been considered highly improbable by both of them in view of Mr. Avery's greater years and feebler health, although it was that event which actually occurred.     So, instead of being proof of a resulting trust in favor of Robert S. Avery, the testimony shows conclusively that no such trust was intended or contemplated by the parties.     If the transaction can be construed as creating any trust whatever, and it is not at all clear that it does create a trust of any kind, the trust is a conventional one, inconsistent with any theory of a resulting trust.     There may be cases where, upon the failure of an express agreement, parties may fall back upon a resulting trust ; but that can only be where the resulting trust exists independently of the express agreement and is not inconsistent with it.     The failure of an express trust or of a specific agreement in regard to real estate to prove effective does not authorize parties by that failure alone to fall back upon a resulting trust when none was intended in the transaction.

We have no desire to dissent from the statement of the law by the learned justice who heard this case in the court below, as contained in his very able and elaborate opinion which we find in the record ; but we fail to find in the record the testimony which in our opinion is required to support it.

With reference to the legacy of $1,000 given to the appellants by the testator, Robert S. Avery, and which is sought to be forfeited in this proceeding on account of the alleged disputing of the will by the appellants, it is not seriously controverted by the appellee that the decree of the court below in that regard must be modified.     Forfeiture is not greatly favored in equity under any circumstances ; and this case is not one for the enforcement of a forfeiture.     It

may be suspected that the claim of the appellants to the property in dispute was the very thing against which the testator was solicitous to guard ; but clearer and more unequivocal language for that purpose should have been used to justify a court of equity in decreeing a forfeiture in this case.   Claiming property which it is contended did not pass under the will, and which we here hold did not pass under the will, cannot in any proper legal sense be regarded as a disputing of the will.

We are of opinion that *the decree of the Supreme Court of the District of Columbia in this case is erroneous, and that it should be reversed, with costs ; and that the cause should be remanded to that court, with directions to vacate that decree, and to dismiss the bill of complaint.   And it is so ordered.*